UNITED STATES of America,
Plaintiff,

v.

William DEL TORO et al., Defendants.

No. 73 Cr. 289.

United States District Court,
S. D. New York.

Dec. 18, 1975.

See also, D.C., 405 F.Supp. 1166.

Thomas J. Cahill, U. S. Atty., New York City, for plaintiff; Edward J. Kuriansky, New York City, of counsel.

Guggenheimer & Untermeyer by Harold Baer, Jr., New York City, for Kaufman.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

█ Perhaps the most persuasive argument that Kaufman makes in this Rule 35 motion for reduction in sentence is that the fifteen months which have passed since sentence was imposed have been fraught with "anxiety and fears" and have, in essence, made the sentence more severe than contemplated when it was imposed. This argument is the more poignant when one realizes that, with any kind of luck, Kaufman might now have been out on parole with jail time behind him had he elected to commence serving his sentence when it was first imposed. But this argument, though appealing, may not be entertained. Surely it cannot be the law—especially in a case like this where the objective of sentence is not reform but vindication of the law and deterrence to others—that one may bring about reduction of sentence by the self-imposed hardships of delay.

Aside from this argument, movant Kaufman raises the factors urged at the time of original sentence, and makes three new arguments: the sentence imposed was unreasonably disparate to sentences imposed by other judges upon allegedly similar offenders; there should be a reduction in light of the Court of Appeals' action in reversing the bribery counts; and that Kaufman, since the imposition of sentence, has cooperated with the United States Attorney's Office and with the New York Special Prosecutor.

█ In view of the fact that the Court of Appeals specifically called the claim of disparity to my attention (513 F.2d at 667 n. 11) it must be carefully considered. Aside from the disparity between the sentence imposed upon Kaufman and his co-defendants (the reasons for which were exhaustively canvassed at the time of original sentence and need not be repeated) Kaufman points to four other persons involved in corruption in

the Model Cities Program who received lesser sentences than his. Those persons, and their sentences, are:

| | |
|---|---|
| Pedro Morales | Probation |
| Kingdon DeWitt | 6 months |
| Anthony Loschiavo | 1 year |
| John Sanders | 2 years[1] |

I have examined the probation reports with respect to those defendants, and concluded that the difference in sentence between Kaufman and each of them is justified.

With respect to Morales, it was his cooperation with the government which, as a practical matter, made possible the whole Model Cities investigation. It is not for me to determine whether probation rather than a reduced amount of jail time was the appropriate reward for such services to the government. That was a problem to be solved by the particular judge who sentenced him. Suffice it to say that I find the disposition of the Morales case to be here irrelevant

The defendant DeWitt pleaded guilty to making a false statement to the grand jury, in that he had falsely denied speaking to Morales about the latter's receipt of money. Although the indictment accused him of receiving bribes, this was neither admitted by him nor proved by the government. It is futile to speculate what the government might have proved had the case gone to trial. The sentencing judge was bound by the record before him.

Defendant Loschiavo, although indicted on four counts charging conspiracy, bribery and two perjuries, was convicted only of bribery. Like Kaufman, he was charged with and convicted of corrupting a public official. However, so far as the probation report indicates, the corruption of which he was convicted was the only one in which he was ever involved.

Defendant Sanders pleaded guilty to the overall conspiracy of which he and Morales were indicted, and it does not

---

1. The supporting affidavit says that Sanders only served one year. However, Sanders' application for reduction of sentence was denied, so if he was released at the end of one year it must have been by action of the Board of Parole.

appear that he rendered any service to the government. In one respect his situation is therefore comparable to Kaufman's. In a very important other respect, however, it is different. Sanders—a former member of the Bar—was a public official who allowed himself to be corrupted. Kaufman, on the other hand, was a representative of the business community—an active member of the Bar—who corrupted public officials for his own benefit and the benefit of his clients. As I explained at sentence, it is my considered view that there can be no hope of making headway against corruption unless the latter type of offense is dealt with more severely than the former.

In the above discussion I have referred to the fact that some defendants were convicted and others pleaded guilty. It has—to date at least—been my view that this should not be a factor in fixing sentence, at least where the defendant (as did Kaufman) refrains from committing perjury in the course of his defense. However this case illustrates the hazards of going to trial. Had Kaufman pleaded guilty, I should have—as was the judge by whom DeWitt was sentenced—been confronted with pleas to one or more specific crimes and, perhaps, a probation report suggesting a host of other—but unproved—offenses. As it is, I am confronted with a jury verdict establishing guilt of an overall conspiracy and a host of rather blatant perjuries. Moreover I was forced to listen to a whole series of tape recordings in which Kaufman vividly—and with apparent pride—demonstrated that he was an incessant and resourceful corrupter of public officials. I cannot pretend that this did not influence me in my appraisal of the seriousness of his offense.[2]

■ With respect to the dismissal of the bribery counts, that fact does not seem to me at all relevant to the question of sentence. I observed when denying bail pending appeal that, although

the validity of the bribery counts seemed highly debatable (see 513 F.2d at 661), their inclusion in the indictment made admissible no evidence that would not have been available without them and had no effect on the course of the trial. By the same token, the technical ground on which they were dismissed had nothing to do with Kaufman's moral guilt. Their elimination should therefore have no effect on his sentence.

■ Finally, I turn to Kaufman's alleged post-sentence attempts to cooperate with the United States Attorney's Office and with the office of the Special Prosecutor (Mr. Nadjari). Suffice it to say that neither such alleged attempt proved productive. Attempts to cooperate with the government, in my view, are relevant to sentence only if they either (a) bring results useful to the government or (b) show a contrition of spirit suggesting a reformed outlook. Had Kaufman followed his original attorney's advice and continued the cooperation he at first started, he might both have made a showing to contrition and accomplished something for the government. As it is, he accomplished nothing. Far from showing contrition, he arrogantly broke off his original cooperation because he could not do it on his own terms, immunity for his own misdeeds (see 513 F.2d 666, n. 8), and agreed to cooperate with Mr. Nadjari only when these terms had been met. His offers to "help" have been solely motivated by a desire to make a record on which to base a plea for reduction of sentence. Having failed to produce anything of value, such efforts have been of no avail.

■ The defendant's wife has made poignant appeals in his behalf both in person and by letter. These appeals illustrate the stark fact that a prison sentence frequently brings greater hardship to the offender's family than to the offender himself. This is a most unpleasant fact of life. However, it cannot be allowed to defeat a sentence such as this

2. Had Kaufman been required to plead to the conspiracy, only this latter consideration would have been relevant. It is, of course,

impossible for me to state with certainty the exact effect the trial (and the tapes) had on my thinking, but I am aware it was significant.

which, as already indicated, was imposed for purposes of vindication and deterrence.

In conclusion it seems to me that the sentence imposed was justified. However, in light of the considerations mentioned in the preceding paragraph I have reviewed the whole problem to determine whether any amelioration would be possible without defeating the basic purposes of the sentence. In light of the fact that Sanders (who as above noted was one of the officials corrupted) received a two-year sentence, it seems to me that Kaufman's could be reduced to three years without vitiating the stated purposes of the instant sentence, and it is so ordered. Defendant is ordered to surrender to the United States Marshal on Monday, January 5, 1976.